UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAMES BALDWIN, II,<br>                      Defendant. | Criminal No. 1:25-cr-37<br><br>Violations:<br>18 U.S.C. § 1343<br>26 U.S.C. § 7202 |

## INFORMATION

**FILED**
JUL 2 4 2025
U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

The United States Attorney charges that:

### COUNT ONE
(Wire Fraud)

### INTRODUCTION

At all times relevant to this Indictment:

#### The COVID-19 Pandemic and the CARES Act

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

2. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3. The Small Business Association ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA is headquartered in Washington, D.C. and maintains its computer servers outside of the State of West

1

Virginia. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

## The Paycheck Protection Program

5. One of the loans created was the Paycheck Protection Program ("PPP") loan. This program provided loans to small businesses for job retention and certain other expenses.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One requirement is that the business had to be in operation as of February 15, 2020. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its average monthly payroll expenses and number of employees. These figures were then used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, a business applying for a PPP loan had to provide documentation showing its payroll expenses.

7. A PPP loan application must be processed by a participating lender, such as a financial institution. If a PPP loan is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

8. The PPP loan proceeds must be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal of the

PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

9. PPP loan applications were electronically submitted or caused to be submitted by the borrower and ultimately received through SBA servers located in Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

10. The PPP program was extended and expanded by the Consolidated Appropriations Act ("CAA"), signed into law on December 27, 2020. The CAA expanded the PPP program to allow additional types of businesses to apply for PPP loans, and also authorized second draw loans.

Scheme to Defraud

11. Beginning in or about July 1, 2020 and continuing until in or about November 18, 2021, 2021, defendant **JAMES BALDWIN, II** knowingly devised, intended to devise, and participated in a scheme to defraud the United States by submitting fraudulent PPP applications containing false representations.

12. It was part of the scheme that **JAMES BALDWIN, II** submitted PPP applications in the name of other businesses that he reported to own and made false statements about those businesses, the number of employees and the gross income to obtain the loans. Those false representations were designed to fraudulently obtain proceeds ultimately from the SBA.

13. It was a further part of the scheme that **JAMES BALDWIN, II** applied for a PPP loan for JB Decks, reporting that JB Decks was established in July 2008, and that he employed 9 employees with an average monthly payroll of $52,824.

14. It was part of the scheme that **JAMES BALDWIN, II** submitted an SS-4 whereby the IRS assigned an employee identification number to JB Decks dated July 28, 2008, when in reality, SS-4 was issued by the IRS on July 28, 2020.

15. It was part of the scheme that **JAMES BALDWIN, II** submitted a Business Registration Certificate from the West Virginia Secretary of State for JB Decks that was dated July 29, 2008, when the Certificate was actually issued on July 28, 2020.

16. As a result of James Baldwin, II's false representations, JB Decks was approved for a first draw PPP loan in the amount of $132,060.00 on August 3, 2020 and a second draw PPP loan in the amount of $132,060 on March 2, 2021

17. It was further part of the scheme that **JAMES BALDWIN, II** submitted PPP loan applications for first and second draw loans for a company called WV Decks, reporting that the business was established in August 2004 and that WV Decks employed 9 individuals with a monthly payroll of $56,338. **JAMES BALDWIN, II** was approved for a first draw loan, in his own name, on February 19, 2021 for $140,845 and was approved for a second draw loan in the name of WV Decks on April 27, 2021 in the amount of $140,845.00.

18. It was part of the scheme that the documents that **JAMES BALDWIN, II** submitted for the loans related to WV Decks were falsified: the Certificate from the West Virginia Secretary of State submitted in support of the loan was dated August 24, 2004 when the company was not registered with the Secretary of State until August 4, 2020; and the employee identification number was only assigned August 3, 2020 and could not have been used to file A tax document in 2019.

19. It was further part of the scheme that **JAMES BALDWIN, II** submitted PPP loan applications for first and second draw loans for a company called Morgantown Decks, representing that Morgantown Decks employed 7 employees and that **JAMES BALDWIN, II** owned no other businesses. **JAMES BALDWIN, II** submitted purported tax records of SelectDecks in support of the loan. **JAMES BALDWIN, II** was approved for a $40,000.00 first draw PPP loan on June 3, 2020, and $29,917.00 second draw loan on January 30, 2021. **JAMES BALDWIN, II**'s representation

regarding Morgantown Decks was false as SelectDecks was the company employing the individuals and **JAMES BALDWIN, II** had already obtained a PPP loan for SelectDecks.

20.   It was further part of the scheme that **JAMES BALDWIN, II** had applied for a PPP loan for SelectDecks, LLC the only business that was in operation on April 7, 2020. In his application **JAMES BALDWIN, II** reported that he owned no other business, that he employed 6 individuals and had an average monthly payroll of $21,495.00. On April 10, 2020, SelectDecks loan was approved for $35,805.00.

21.   It was further part of the scheme that on February 6, 2021, **JAMES BALDWIN, II** applied for a second draw PPP loan reporting an average monthly payroll of $44,968 and 7 employees. In support of his loan he submitted a 941 tax form for the first quarter of 2020, and reported that he owned no other businesses which received PPP loans, resulting in receiving a second draw loan in the amount of $112,420.00.

22.   It was further part of his scheme that for each of these loans, **JAMES BALDWIN, II** submitted an application for forgiveness of each of these loans, certifying that at least sixty percent of each loan was utilized for payroll expenses.

23.   On or about August 3, 2020, in Morgantown, in Monongalia County, in the Northern District of West Virginia, **JAMES BALDWIN, II** did knowingly cause to be transmitted by means of a wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds, that is an internet transmission originating from the Northern District of West Virginia to the SBA server in Virginia, constituting a false and fraudulent application of a PPP loan for JB Decks, in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
(Failure to Pay Taxes)

1. At all times relevant to this Indictment, SelectDecks, LLC (hereinafter "SelectDecks") was a West Virginia limited liability company doing business in Morgantown, West Virginia.

2. At all times relevant to this Indictment, defendant **JAMES BALDWIN, II** acted as a SelectDecks member manager, and exercised total control over every aspect of SelectDecks's business affairs, including approving all payments by the company and controlling all of SelectDecks's bank accounts.

4. At all times relevant to this Indictment, SelectDecks withheld taxes from its employees' paychecks, including federal income taxes, Medicare, and Social Security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes). These income and FICA taxes will be referred to in this Indictment collectively as "payroll taxes."

5. At all times relevant to this Indictment, defendant **JAMES BALDWIN, II** caused SelectDecks to make expenditures for defendant's personal benefit while, at the same time, failing to pay over to the Internal Revenue Service payroll taxes withheld from SelectDecks' employees' paychecks.

6. At all times relevant to this Indictment, SelectDecks was required to make deposits of the payroll taxes to the Internal Revenue Service on a periodic basis. In addition, SelectDecks was required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits.

7. As a member manager of SelectDecks, defendant **JAMES BALDWIN, II** was a "responsible person," that is, the defendant had the responsibility to collect, truthfully account for, and pay over SelectDecks' payroll taxes.

8.  On or about July 31, 2023, SelectDecks failed to file an Employer's Quarterly Federal Tax Return (Form 941), stating that the total amount of payroll taxes the company withheld from its employees for the preceding calendar quarter was $11,570.75, comprised of $6,821.75.00 for federal income taxes withheld and $4,749 for employee Social Security and Medicare taxes.

9.  On or about July 31, 2023, and thereafter, in Monongalia County, in the Northern District of West Virginia, defendant **JAMES BALDWIN, II** and SelectDecks (not a defendant herein) willfully failed to pay over said $16,319.75 in withheld payroll taxes to the Internal Revenue Service.

In violation of Title 26, United States Code, Section 7202.

## **FORFEITURE ALLEGATION**

Wire Fraud

1.      Pursuant to Title 28, United States Code, Sections 2461(c), Title 18 United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case, that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, or a conspiracy to violate such offense, including a money judgment in the amount of at least $738,230.00.

2.      Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

*[signature]*
RANDOLPH J. BERNARD
Acting United States Attorney


Jennifer T. Conklin
Assistant U.S. Attorney

Morgan McKee
Assistant U.S. Attorney